NIEMEYER, Circuit Judge:
In this appeal, the central question presented is whether a false rumor that a *300 female employee slept with her male boss to obtain promotion can ever give rise to her employer's liability under Title VII for discrimination "because of sex." We conclude that the allegations of the employee's complaint in this case, where the employer is charged with participating in the circulation of the rumor and acting on it by sanctioning the employee, do implicate such liability. Therefore, we reverse the district court's order dismissing Count I of the complaint, which makes a claim on that basis, as well as Count II, which alleges retaliation for complaining about such a workplace condition. We affirm, however, the court's dismissal of Count III because the employee failed to exhaust that claim before the Equal Employment Opportunity Commission.
I
The facts before us are those alleged in the complaint. And, in the present procedural posture where the district court granted the defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept those facts as true. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc. , 637 F.3d 435, 440 (4th Cir. 2011). They show the following.
From December 2014 until May 2016, Evangeline Parker worked for Reema Consulting Services, Inc., ("RCSI") at its warehouse facility in Sterling, Virginia. While she began as a low-level clerk, she was promoted six times, ultimately rising to Assistant Operations Manager of the Sterling facility in March 2016.
About two weeks after Parker assumed that position, she learned that "certain male employees were circulating within RCSI" "an unfounded, sexually-explicit rumor about her" that "falsely and maliciously portrayed her as having [had] a sexual relationship" with a higher-ranking manager, Demarcus Pickett, in order to obtain her management position. The rumor originated with Donte Jennings, another RCSI employee, who began working at RCSI at the same time as Parker and in the same position. Because of her promotions, however, Parker soon became Jennings' superior, making him jealous of and ultimately hostile to her achievement.
The highest-ranking manager at the warehouse facility, Larry Moppins, participated in spreading the rumor. In a conversation with Pickett, Moppins asked, "hey, you sure your wife ain't divorcing you because you're f- -king [Parker]?" As the rumor spread, Parker "was treated with open resentment and disrespect" from many coworkers, including employees she was responsible for supervising. As she alleged, her "work environment became increasingly hostile."
In late April 2016, Moppins called a mandatory all-staff meeting. When Parker and Pickett arrived a few minutes late, Moppins let Pickett enter the room but "slammed the door in Ms. Parker's face and locked her out." This humiliated Parker in front of all her coworkers. Parker learned the next day that the false rumor was discussed at the meeting.
The following day, Parker arranged a meeting with Moppins to discuss the rumor, and at that meeting Moppins blamed Parker for "bringing the situation to the workplace." He stated that he had "great things" planned for Parker at RCSI but that "he could no longer recommend her for promotions or higher-level tasks because of the rumor." He added that he "would not allow her to advance any further within the company."
Several days later, Parker and Moppins met again to discuss the rumor. Moppins again blamed Parker and said that he should have terminated her when she began "huffing and puffing about this BS
*301 rumor." During the meeting, Moppins "lost his temper and began screaming" at Parker.
Later that same day, Parker filed a sexual harassment complaint against Moppins and Jennings with RCSI's Human Resources Manager.
Several weeks later, in mid-May, Jennings submitted a complaint to the Human Resources Manager, alleging that Parker "was creating a hostile work environment against him through inappropriate conduct," and Parker was then instructed, based on Jennings' complaint, to have no contact with Jennings. While she asserts that Jennings' complaint was false, she followed the instruction. Supervisors, however, permitted Jennings to spend time in Parker's work area talking to and distracting employees she managed. On these occasions, Jennings stared at Parker at length and smirked and laughed at her. Parker raised this situation with her supervisor and the Human Resources Manager, but neither addressed it, allegedly exacerbating Parker's experience of a hostile work environment.
On May 18, 2016, Parker was called to a meeting with Moppins, the Human Resources Manager, and RCSI's in-house counsel, and at that meeting, Moppins simultaneously issued Parker two written warnings and then fired her. One warning was based on Jennings' complaint against Parker, and the other asserted that Parker had poor management ability and was insubordinate to Moppins. In her complaint, Parker alleges that both warnings were unfounded. She also alleges that RCSI failed to follow its "three strikes" rule under which employees are subject to termination only "after receiving three written warnings." She had received no prior warnings. She alleges further that the rule "was disparately enforced such that male employees were generally not fired even after three or more warnings, while some female employees were terminated without three warnings or with all three warnings being issued at once."
Based on these facts, Parker alleges, in Count I, a hostile work environment claim for discrimination because of sex, in violation of 42 U.S.C. § 2000e-2 ; in Count II, a retaliatory termination claim under § 2000e-3; and in Count III, a discriminatory termination claim alleging that RCSI terminated her employment contrary to its three-warnings rule, in violation of § 2000e-2.
By order dated January 19, 2018, the district court granted RCSI's motion to dismiss Parker's complaint for failure to state a claim. The court explained its reasoning from the bench, stating with respect to Count I:
[I]t would be truly offensive to me or anybody else to have someone spread a rumor that I or any other person received a promotion because of sexual favors or having sexual relations with the person who made the decision. That goes right to the core of somebody's merit as a human being to suggest that they were promoted and the promotion was not based upon merit, but rather was based upon the giving of sexual favors.
* * *
The problem for Ms. Parker is that her complaint as to the establishment and circulation of this rumor is not based upon her gender, but rather based upon her alleged conduct, which was defamed by, you know, statements of this nature. Clearly, this woman is entitled to the dignity of her merit-based promotion and not to have it sullied by somebody suggesting that it was because she had sexual relations with a supervisor who promoted her. But that is not a harassment based upon gender. It's based *302 upon false allegations of conduct by her. And this same type of a rumor could be made in a variety of other context[s] involving people of the same gender or different genders alleged to have had some kind of sexual activity leading to a promotion. But the rumor and the spreading of that kind of a rumor is based upon conduct, not gender.
The court also concluded that the alleged harassment was not severe or pervasive. In dismissing Count II, the retaliatory termination claim, the court stated that "because the complaint fail[ed] to establish that the matters alleged in Count [I] were discriminatory, [Parker] has failed to establish, therefore, that her belief was objectively reasonable and, therefore, she cannot establish a prima facie case of retaliation." Finally, in dismissing Count III, the discriminatory termination claim, the court gave as its reason that Parker had not exhausted the claim with the EEOC.
From the district court's order of dismissal, Parker filed this appeal.
II
The core reason given by the district court to dismiss Count I was that the harassment Parker suffered was "not ... harassment based upon gender . It [was] based upon false allegations of conduct by her." (Emphasis added). In addition, the court concluded that the harassment was not sufficiently severe or pervasive to have altered the conditions of Parker's employment because "the temporal element here [was] very short in terms of how long this rumor was in circulation. Just a matter of a few weeks. And a few slights that she [has] referenced here do not rise up to the level that would suffice for it being severe and pervasive." For these reasons, the court concluded that Count I failed to state a claim under Title VII for a hostile work environment based on sex.
Title VII provides that it is an unlawful employment practice "to discharge ... or otherwise to discriminate" against an employee "with respect to ... conditions ... of employment, because of such individual's ... sex ...; or to limit, segregate, or classify [such] employee[ ] ... in any way which would deprive or tend to deprive [the employee] of employment opportunities or otherwise adversely affect [the employee's] status as an employee, because of such [employee's] ... sex." 42 U.S.C. § 2000e-2(a). An employee claiming a severe or pervasive hostile work environment because of her sex can obtain relief under Title VII. See Harris v. Forklift Sys., Inc. , 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To state a claim under Title VII for a hostile work environment because of sex, the plaintiff must allege workplace harassment that (1) was "unwelcome"; (2) was based on the employee's sex; (3) was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (4) was, on some basis, imputable to the employer. Bass v. E.I. DuPont de Nemours & Co. , 324 F.3d 761, 765 (4th Cir. 2003) ; see also EEOC v. Sunbelt Rentals, Inc. , 521 F.3d 306, 313-14 (4th Cir. 2008).
In this appeal, only the requirements that the harassment be based on sex and that it be sufficiently severe or pervasive are at issue. We address each in order.
A
RCSI contends first, as the district court concluded, that its actions toward Parker were taken not because she was a female but rather because of her rumored conduct in sleeping with her boss to obtain promotion. It argues that this rumor was not "gender specific" but rather was "solely about [Parker's] conduct and insufficient *303 to support claims of an illegal hostile work environment for women." Because "[t]here is no dispute that Parker believes that the rumor was started 'by a co-worker who was jealous of her success at the company' and not because she was a woman," it thus contends that because "there is no doubt that his rumor was solely about her conduct" and could have been levelled against a man, it is insufficient to support a claim of discrimination based on sex.
We conclude, however, that RCSI's argument fails to take into account all of the allegations of the complaint, particularly those alleging the sex-based nature of the rumor and its effects, as well as the inferences reasonably taken from those allegations, which must be taken in Parker's favor, as required at this stage of the proceedings. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc. , 591 F.3d 250, 253 (4th Cir. 2009).
As alleged, the rumor was that Parker, a female subordinate, had sex with her male superior to obtain promotion, implying that Parker used her womanhood, rather than her merit, to obtain from a man, so seduced, a promotion. She plausibly invokes a deeply rooted perception - one that unfortunately still persists - that generally women, not men, use sex to achieve success. And with this double standard, women, but not men, are susceptible to being labelled as "sluts" or worse, prostitutes selling their bodies for gain. See McDonnell v. Cisneros , 84 F.3d 256, 259-60 (7th Cir. 1996) (concluding that rumors of a woman's "sleeping her way to the top" "could constitute a form of sexual harassment"); Spain v. Gallegos , 26 F.3d 439, 448 (3d Cir. 1994) (concluding that a rumor that a woman gained influence over the head of the office because she was engaged in a sexual relationship with him was sufficient to allow a reasonable jury to conclude the a woman suffered the harassment alleged because she was a woman); see also Price Waterhouse v. Hopkins , 490 U.S. 228, 250-51, 258, 272-73, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality and concurring opinions) (noting that gender stereotypes can give rise to sex discrimination in violation of Title VII).
The complaint not only invokes by inference this sex stereotype, it also explicitly alleges that males in the RCSI workplace started and circulated the false rumor about Parker; that, despite Parker and Pickett's shared tardiness, Parker as a female, not Pickett as a male, was excluded from the all-staff meeting discussing the rumor; that Parker was instructed to have no contact with Jennings, her male antagonist, while Jennings was not removed from Parker's workplace, allowing him to jeer and mock her; that only Parker, who complained about the rumor, but not Jennings, who also complained of harassment, was sanctioned; and that Parker as the female member of the rumored sexual relationship was sanctioned, but Pickett as the male member was not.
In short, because "traditional negative stereotypes regarding the relationship between the advancement of women in the workplace and their sexual behavior stubbornly persist in our society," and "these stereotypes may cause superiors and coworkers to treat women in the workplace differently from men," it is plausibly alleged that Parker suffered harassment because she was a woman. Spain , 26 F.3d at 448 ; see also Price Waterhouse , 490 U.S. at 250-51, 258, 272-73, 109 S.Ct. 1775 (plurality and concurring opinions); McDonnell , 84 F.3d at 259-60 ; cf. Passananti v. Cook Cty. , 689 F.3d 655, 665-66 (7th Cir. 2012) (noting that use of the word "bitch" to demean a female can support a sexual discrimination claim even though the word may sometimes be directed at men);
*304 Reeves v. C.H. Robinson Worldwide, Inc. , 594 F.3d 798, 810 (11th Cir. 2010) (en banc) (same); Chadwick v. WellPoint, Inc. , 561 F.3d 38, 47 (1st Cir. 2009) (finding actionable the denial of a promotion because the employee was a working mother with young children); Back v. Hastings on Hudson Union Free Sch. Dist. , 365 F.3d 107, 119-21 (2d Cir. 2004) (same).
Thus, the dichotomy that RCSI, as well as the district court, purports to create between harassment "based on gender" and harassment based on "conduct" is not meaningful in this case because the conduct is also alleged to be gender-based. We conclude that, in overlooking this, the district court erred.
B
RCSI also contends that the harassment Parker alleged in the complaint was not sufficiently severe or pervasive to create a hostile work environment. And the district court adopted this view, noting that the rumor circulated for only "a few weeks" and involved only "a few slights." Parker argues, on the other hand, that her complaint alleges harassment that was severe or pervasive, as it was "frequent," "maliciously designed," "humiliating," "permeated throughout her workplace," and caused "open resentment and disrespect" from her coworkers. Indeed, she maintains that her harassment even had a physical component.
In determining whether the harassment alleged was sufficiently severe or pervasive, we must "look[ ] at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the] employee's work performance." Harris , 510 U.S. at 23, 114 S.Ct. 367.
We conclude that the complaint's allegations and the inferences that may reasonably be drawn from them support Parker's claim that the harassment she experienced was severe or pervasive such that it altered the conditions of her employment and created an abusive atmosphere.
The complaint alleges that, over the period from Parker's promotion to Assistant Operations Manager in March 2016 until she was fired on May 18, 2016, the rumor and its adverse effects harmed Parker. The frequency alleged in the complaint was greater than what the district court characterized as "a few slights." Indeed, the harassment was continuous, preoccupying not only Parker, but also management and the employees at the Sterling facility for the entire time of Parker's employment after her final promotion.
The harassment began with the fabrication of the rumor by a jealous male workplace competitor and was then circulated by male employees. Management too contributed to the continuing circulation of the rumor. The highest-ranking manager asked another manager, who was rumored to be having the relationship with Parker, whether his wife was divorcing him because he was "f- -king" Parker. The same manager called an all-staff meeting, at which the rumor was discussed, and excluded Parker. In another meeting, the manager blamed Parker for bringing the rumor into the workplace. And in yet another meeting, the manager harangued Parker about the rumor, stating he should have fired her when she began "huffing and puffing" about it. During this period, Parker was also told that because of the rumor, she could receive no further promotions in the company. She then faced a false harassment complaint launched by the male employee who started the rumor and was sanctioned based on that complaint *305 - first, with the instruction to stay away from the rumormonger and second, with the termination of her employment. If we are to take the allegations from the complaint and the reasonable inferences therefrom as true, as we must, the harassment related to the rumor was all-consuming from the time the rumor was initiated until the time Parker was fired.
The harassment emanating from the rumor also had physically threatening aspects, even though harassment need not be physically threatening to be actionable. At an all-staff meeting at which the rumor was discussed, the warehouse manager slammed the door in Parker's face, and at another meeting, he screamed at Parker as he lost his temper while blaming Parker for the rumor. That this harassment came from Parker's supervisor made it all the more threatening. See Burlington Indus. Inc. v. Ellerth , 524 U.S. 742, 763, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("[A] supervisor's power and authority invests his or her harassing conduct with a particularly threatening character").
In addition, the harassment related to the rumor was humiliating. As the district court rightly noted, it "goes right to the core of somebody's merit as a human being" to suggest they were promoted not on worth but for sexual favors. The rumor and its consequences thus entailed "open resentment and disrespect from her coworkers," including those she was responsible for supervising.
Finally, the harassment interfered with Parker's work. She was blamed for bringing the controversy to the workplace; she was excluded from an all-staff meeting; she was humiliated in front of coworkers; she was adversely affected in her ability to carry out management responsibility over her subordinates; she was restrained in where she could work, being told to stay away from the rumormonger; and she was told she had no future at RCSI because of the rumor. In addition, she alleges that her employment was terminated because of the rumor and, as stated by management, because of the rumormonger's complaint. In short, RCSI's management's entire relationship with Parker, as well as Parker's employment status, was changed substantially for the worse.
Thus, based on the allegations of Parker's complaint and the reasonable inferences flowing therefrom, we conclude that Parker adequately alleges the severe or pervasive element of illegal harassment. See Harris , 510 U.S. at 22, 114 S.Ct. 367.
Accordingly, because Parker's complaint plausibly alleges a hostile work environment claim under Title VII for discrimination because of sex, we reverse the district court's ruling dismissing Count I.
III
The district court also dismissed Parker's retaliatory termination claim alleged in Count II, holding that "because the complaint fails to establish that the matters alleged in [Count I] were discriminatory, [Parker] has failed to establish ... that her belief [that she was subject to gender discrimination] was objectively reasonable and, therefore, she cannot establish a prima facie case of retaliation." Because we conclude that the complaint does indeed allege a plausible claim of a hostile work environment based on sex, in violation of Title VII, we reverse the dismissal of Count II alleging a retaliatory termination claim. See Boyer-Liberto v. Fountainebleau Corp. , 786 F.3d 264, 285 (4th Cir. 2015) (en banc) (holding that because alleged harassment met elements of hostile work environment claim, complaining about such harassment was necessarily protected activity for purpose of retaliation claim).
*306 IV
Finally, the district court dismissed the discriminatory termination claim alleged in Count III, concluding that Parker had not exhausted this claim with the EEOC. Specifically, the district court held that the allegations of RCSI's disparate enforcement of its three-strikes policy, as described in Parker's complaint, were absent in her EEOC charging document. We agree with the court.
Parker must exhaust her claims with the EEOC by including them in charges filed with the agency. In determining whether she exhausted her claims, we give her credit for charges stated in her administrative charging document, as well as "charges that would naturally have arisen from an investigation thereof." Dennis v. County of Fairfax , 55 F.3d 151, 156 (4th Cir. 1995). But when the claims in her court complaint are broader than "the allegation of a discrete act or acts in [the] administrative charge," they are procedurally barred. Chacko v. Patuxent Inst. , 429 F.3d 505, 508-10 (4th Cir. 2005).
In this case, Parker's EEOC charge made no reference to the need to receive warnings or a violation of RCSI's three-strikes policy. She did not refer to the policy or the allegation that RCSI treated men and women differently in applying the policy. She merely asserted sex-based termination based on the facts relating to the rumor and the conduct that followed from it. Accordingly, RCSI was not "afforded ample notice of the allegations against it" with respect to Count III. Sydnor v. Fairfax County , 681 F.3d 591, 595 (4th Cir. 2012). We thus affirm the dismissal of the discriminatory termination claim alleged in Count III, as it alleges a broader pattern of misconduct than is stated in the administrative charging document.
* * *
In sum, we reverse the district court's order dismissing Counts I and II and affirm its order dismissing Count III.
AFFIRMED IN PART, REVERSED IN PART