**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1931

TIJUANA DECOSTER,

        Plaintiff – Appellant,

    v.

XAVIER BECERRA, Secretary of the U.S. Department of Health and Human Services, National Institutes of Health,

        Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge. (8:21-cv-02195-TDC)

Argued: October 27, 2023                 Decided: October 2, 2024

Before GREGORY, RICHARDSON, and BENJAMIN, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Benjamin wrote the opinion, in which Judge Gregory and Judge Richardson joined.

**ARGUED:** Eden Joanna Brown Gaines, BROWN GAINES, LLC, Washington, D.C., for Appellant. Matthew Adam Haven, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

DEANDREA GIST BENJAMIN, Circuit Judge:

Tijuana Decoster sued Xavier Becerra, the Secretary of the United States Department of Health and Human Services ("HHS"). She alleged that she was discriminated against on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § § 2000e to 2000e-17 ("Title VII"). Decoster asserted three claims under Title VII: (1) hostile work environment based on race; (2) constructive discharge based on race; and (3) retaliation. The district court dismissed Decoster's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, we affirm the dismissal of Decoster's hostile work environment and constructive discharge claims. But we reverse the dismissal of her retaliation claim and remand for further proceedings.

I.

The facts below are taken from Decoster's complaint. "[W]here the district court granted the defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept those facts as true." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 300 (4th Cir. 2019).

A.

Tijuana Decoster, who identifies as African American, served as the Chief Grants Management Officer for HHS's National Institute of Neurological Disorders & Stroke division ("NIH"). [J.A. 6,7]. In 2007, Robert Finkelstein became Decoster's supervisor. [J.A. 6–7]. Although their working relationship was great for years, it "became strained"

2

in 2019 when Finkelstein began "singl[ing] [her] out in front of her colleagues" and "accus[ing] her of failing in her position." J.A. 7. For example, Finkelstein "often praised her Asian counterpart and spoke to Decoster with contempt," but Decoster "did not observe [Finkelstein] express the same contempt" toward "non-African American colleagues." *Id*. Finkelstein "frequently treated [Decoster] with disdain when they met," *id.* at 8, and "accused her of problems in the work organization for which she could not be responsible," *id.* at 7, so much so that the "tension was palpable and often noted by other employees." *Id*. 8–9.

In August 2019, Finkelstein informed Decoster that he was going to "fire her." *Id*. at 7 (internal quotation marks omitted). But Finkelstein didn't fire Decoster. Instead, he issued Decoster a Letter of Expectation ("LOE") regarding her performance and conveyed that he and Decoster would meet weekly to review her progress. [J.A. 7]. These meetings, however, never occurred. [*Id.*]. That same month, in an effort "to remove herself from the office" and Finkelstein's supervision, Decoster sought a work detail. [J.A. 8]. Finkelstein told her that she should ask the division's Executive Officer for approval, and the authorization for a one-year detail was granted. [J.A. 8].

Decoster "complained directly to . . . Finkelstein and Human Resources about the hostile work environment." *Id.* at 8. However, the harassment continued. In December 2019, Finkelstein placed Decoster on a 60-day Opportunity to Demonstrate Acceptable Performance plan ("ODAP"). [J.A. 8, 76]. The ODAP provided that at the end of the 60-day period, Finkelstein would "conduct a formal review of [Decoster's] performance" and

would, within a week, inform her if she passed.[1]  *Id.* at 80.  The ODAP said that Finkelstein would meet weekly with Decoster, but just like with the LOE, he failed to do so.  [J.A. 8, 79].  This led Decoster to believe Finkelstein "was setting her up for removal."  *Id*. at 8.  That same month, even though her work detail had already been approved, Finkelstein informed Decoster that she could do a terminal detail instead.  [J.A. 8].  This meant that instead of returning to NIH after the conclusion of her one-year detail, her employment with NIH would be terminated.  [J.A. 8].  Finkelstein also notified her that this terminal detail would only transpire if Decoster withdrew her pending complaint with HHS' Equal Employment Opportunity office ("EEO complaint").  [J.A. 8].

Then, in January 2020, Finkelstein told Decoster that he would think about allowing her to stay employed if her Asian colleague agreed to work with her.  [J.A. 8].  Decoster reported this harassment to the Executive Officer, Human Resources, and even Finkelstein, but no corrective action was taken.  *[Id]*.  Decoster "involuntarily retired" in February 2020, *id.* at 9, because "[t]he harassment curtailed [her] []ability to perform her position," *id.* at 8, and it was "clear that . . . Finkelstein intended to terminate [her] employment," *id.* at 9.

---

[1] HHS attached a copy of the ODAP to its motion to dismiss. When deciding a motion to dismiss under Rule 12(b)(6), the court does not consider extrinsic evidence. The court may consider however, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the documents are integral to the complaint and there is no dispute about the documents' authenticity. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Because Decoster's complaint specifically references the ODAP, we find it is integral to the complaint, and where Decoster does not challenge its authenticity, the court considers the ODAP's contents.

B.

Decoster first contacted, and interviewed with, an EEO Counselor in November 2019. [J.A. 14]. On December 31, 2019, she filed a formal discrimination complaint with NIH. [J.A. 14]. She initially alleged harassment and discrimination based on race, and retaliation, but amended her complaint after she resigned in February 2020 to add an allegation of constructive discharge. [J.A. 13, 14]. On November 13, 2020, NIH issued a Final Agency Decision ("FAD") that determined Decoster was subjected to retaliation based on her prior EEO activity when Finkelstein allegedly conditioned approval of a detail assignment on Decoster withdrawing her EEO complaint. [J.A. 19-23]. NIH denied the remainder of her claims and directed her to submit evidence in support of her entitlement to damages. [J.A. 39-40]. On May 28, 2021, the NIH issued an amended Final Agency Decision that affirmed its prior finding that Decoster established only her retaliation claim. [J.A. 69]. It also did not grant reinstatement to a comparable position or award back pay due to its finding that Decoster resigned, and any discrimination did not lead to a loss in wages. [J.A. 69–70]. However, attorney's fees and both nonpecuniary and pecuniary damages were awarded to Decoster. [J.A. 70].

On August 26, 2021, pursuant to her right to file a civil action if she was dissatisfied with the NIH's decision, Decoster filed a complaint against HHS in the District of Maryland. She raised three claims under Title VII: hostile work environment based on race, constructive discharge based on race, and retaliation. [J.A. 9–11].

HHS moved to dismiss Decoster's complaint for failure to state a claim under Fed. R. Civ. P 12(b)(6). [J.A. 5]. The district court granted the motion in full. *Decoster v.*

5

*Becerra*, No. TDC-21-2195, 2022 WL 3083343 (D. Md. Aug. 3, 2022); *Decoster v.*

*Becerra*, No. TDC-21-2195, 2022 WL 4094569 (D. Md. Aug. 23, 2022). Decoster filed a

timely notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo the dismissal of a complaint under Rule 12(b)(6), accepting all

factual allegations as true and drawing reasonable inferences in the plaintiff's favor.

*Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017). To survive a 12(b)(6)

motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). In other words, "a plaintiff must provide sufficient detail

to show that he has a more-than-conceivable chance of success on the merits." *Upstate*

*Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018)

(cleaned up), *vacated on other grounds*, 140 S. Ct. 2736 (2020). Legal conclusions or

conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678.

## III.

Title VII provides that it is "an unlawful employment practice for an employer to

discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1).

Decoster asserted three claims under Title VII: hostile work environment based on race, constructive discharge based on race, and retaliation. We address each in turn.

A.

We begin with Decoster's hostile work environment claim. "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (cleaned up). To state a plausible hostile workplace claim under Title VII, Decoster must allege "that there is (1) unwelcome conduct; (2) that is based on the plaintiff's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Id.* (cleaned up). To determine "whether the harassment alleged was sufficiently severe or pervasive, we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance." *Parker*, 915 F.3d at 304 (cleaned up).

The district court found that Decoster's allegations did not establish severe or pervasive conduct. *Decoster*, 2022 WL 3083343 at *3. Specifically, it held that Decoster failed to allege "specific facts that would demonstrate that Finkelstein engaged in the kind of discriminatory intimidation, ridicule, and insult that characterizes a hostile work environment claim." *Id.* (internal quotation marks omitted).

7

Decoster argues the district court erred in its finding because her allegations that Finkelstein engaged in seven months of harassment, which consisted of intimidating conduct and rumors of her incompetence, were sufficient to state a plausible claim. Specifically, Decoster alleges that Finkelstein humiliated her by "frequently singl[ing] [her] out in front of her colleagues and peers and accus[ing] her of failing in her position," "sp[eaking] to [her] with contempt," "frequently treat[ing] her with disdain," blaming her for issues within the work organization that were out of her control, threatening to fire her once, providing her with a LOE, and placing her on an ODAP. J.A. 7–8. She argues these allegations are like those our court found sufficient to state a claim in *Parker v. Reema Consulting Services, Inc.*, 915 F.3d 297 (4th Cir. 2019). We respectfully disagree.

In *Parker*, a woman was promoted to a manager position and a male employee spread a false rumor that she had a sexual relationship with a manager to obtain her promotion. 915 F.3d at 300. The rumor spread throughout the workplace, and many coworkers treated Parker "with open resentment and disrespect . . . including employees she was responsible for supervising." *Id.* (internal quotation marks omitted). Parker alleged that a high-level manager asked the man with whom Parker was accused of sleeping with, "whether his wife was divorcing him because he was 'f- -king' Parker." *Id.* at 304. The manager also blamed Parker for the rumor, called an all-staff meeting where the rumor was discussed, refused to let Parker attend that meeting, and later told Parker "he should have fired her when she began 'huffing and puffing' about" the rumor. *Id.* Parker "then faced a false harassment complaint launched by the male employee who started the rumor and was sanctioned based on that complaint." *Id.*

8

The court concluded that the alleged harassment was sufficiently severe or pervasive because "the harassment was continuous, preoccupying not only Parker, but also management and the employees at the . . . facility for the entire time of Parker's employment after her final promotion." *Id* at 304. Not only did male coworkers spread the rumor, but "[m]anagement . . . contributed to the continuing circulation of the rumor." *Id.* This court emphasized that "[t]he harassment emanating from the rumor . . . had physically threatening aspects," noting that at the all-staff meeting where the rumor was discussed, the "manager slammed the door in Parker's face, and at another meeting, he screamed at Parker as he lost his temper while blaming Parker for the rumor." *Id.* at 305. Further, the court found that the harassment was humiliating, as it went "right to the core of somebody's merit as a human being to suggest they were promoted not on worth but for sexual favors." *Id.* (internal quotation marks omitted). Finally, the court found that the rumor "interfered with Parker's work" because she was blamed for it, "excluded from an all-staff meeting . . . , humiliated in front of coworkers," had her supervisory authority undermined, was "told to stay away from the rumormonger," and later terminated because of the rumor. *Id.*

The case before us today is not *Parker*. The harassment Decoster alleges centers on a difficult working relationship with Finkelstein and criticisms of her work performance that she believes were unfair—not a rumor that attacked Decoster's "merit as a human being," undermined her supervisory authority, and eventually led to threats on her physical safety. *Id.* (internal quotation marks omitted).

9

Instead, Decoster's allegations are closer aligned with the ones alleged in *Holloway v. Maryland*, 32 F.4th 293 (4th Cir. 2022), where the court found the allegations insufficient to state a plausible hostile work environment claim. In *Holloway*, the plaintiff's supervisor refused to communicate directly with the plaintiff; "surveyed [employees] about [the plaintiff's] leadership and his whereabouts during the workday"; criticized the plaintiff's leadership in meetings; yelled at the plaintiff in a meeting and "slammed documents onto a table"; forced "[the plaintiff] to sign a disciplinary evaluation"; "required [the plaintiff] to address [the supervisor] as 'sir' "; and "did not honor [the plaintiff] at an employee-recognition program." 32 F.4th at 301. The court recognized that "[e]valuation and criticism of one's work performance, while perhaps unpleasant, is not abusive," and "reject[ed] [the plaintiff's] contention that one episode of yelling and pounding the table, even considered with [the plaintiff's] other allegations, is sufficiently severe or pervasive to establish an abusive environment." *Id.*

Finkelstein's issuance of the LOE and the ODAP constituted a supervisor providing negative performance assessments, and just as the court indicated in *Holloway*, "while perhaps unpleasant, [such acts are] not abusive." *Id*. Decoster does not allege potentially physically abusive behavior; she claims only that Finkelstein "spoke to [her] with contempt" and "treated her with disdain." J.A. 7, 8. And as the district court noted, these "general characterizations of Finkelstein's tone or manner of speaking while interacting with Decoster . . . do not provide specific facts that would demonstrate that Finkelstein engaged in the kind of 'discriminatory intimidation, ridicule, and insult' that characterizes a hostile work environment claim." *Decoster*, 2022 WL 3083343, at *3 (quoting *Boyer-*

*Liberto*, 786 F.3d at 277).  We find that Decoster's allegations fall short of being severe or pervasive enough to show an abusive environment.  Therefore, Decoster has not stated a plausible hostile work environment claim.  Accordingly, we affirm the district court's dismissal of Decoster's hostile work environment claim.

B.

Turning now to Decoster's constructive discharge claim, we similarly hold that she has not sufficiently alleged facts to state a plausible claim.

To state a claim for constructive discharge premised on a hostile work environment in this circuit, Decoster must show " 'something more' than the showing required for a hostile work environment claim."  *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004)); *see also Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) ("The 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims.").

Namely, she must show that because of her employer's conduct, she "was subjected to circumstances 'so intolerable that a reasonable person would resign,' "  *Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 144–45 (4th Cir. 2017) (quoting *Green v. Brennan*, 578 U.S. 547, 560 (2016)), "and that she actually resigned," *Evans*, 936 F.3d at 193.  " 'Intolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign."  *Id.* (quoting *Blistein v. St John's Coll.*, 74 F.3d 1459, 1468 (4th Cir.

11

1996), *overruled on other grounds by Oubre v. Entergy Operations, Inc.*, 552 U.S. 422 (1998), *as recognized by Adams v. Moore Business Forms, Inc.*, 224 F.3d 324, 327 (4th Cir. 2000).  Courts instead assess intolerability " 'by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign . . . that is, whether he would have had no choice but to resign.' " *Id.* (alteration in original) (emphasis removed).  It follows then that the test is "objective intolerability," *Consol*, 860 F.3d at 145, and not " 'deliberateness,' or a subjective intent to force a resignation." *Id.*, at 144.  "[D]ifficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to resign." *Evans*, 936 F.3d at 193; *see also James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004) ("[M]ere [d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)) (second alteration in original)).

The district court correctly found that "[t]o the extent that Decoster's claim is that her work environment was so hostile that she had no choice but to resign . . . for similar reasons to those discussed . . . in relation to the hostile work environment claim, the allegations are insufficient to state a plausible constructive discharge claim on that basis." *Decoster*, 2022 WL 3083343, at *4 (citing *Evans*, 936 F.3d at 193, for its holding that a constructive discharge claim based on a hostile work environment requires the plaintiff to show "something more than the showing required for a hostile work environment claim.").

Decoster's allegations that Finkelstein once threatened to fire her, issued her a LOE, then placed her on an ODAP, told her she could do a terminal detail, "spoke to [her] with

12

contempt," J.A. 7, and "treated her with disdain," *id.* at 8, and other general characterizations of tone, do not sufficiently allege a hostile work environment, and so they cannot also be the basis for her constructive discharge claim. Decoster has therefore not alleged facts sufficient to plausibly show that she was constructively discharged. Therefore, we affirm the district court's dismissal of her claim on this basis.

On appeal, Decoster further argues that we should adopt a theory of constructive discharge endorsed by the Seventh Circuit in *EEOC v. Univ. of Chicago Hospitals*, 276 F.3d 326 (7th Cir. 2002), whereby constructive discharge occurs "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Id*. at 332; *see also id.* (reasonable employee would believe termination was imminent where she arrived at work to find her "belongings were packed and her office was being used for storage"). Beyond the fact our circuit has not adopted this theory of constructive discharge, Decoster's allegations fall woefully short to state a claim under the cited caselaw as she does not allege any acts on HHS's part demonstrating the type of imminence *University of Chicago Hospitals* and related Seventh Circuit authority seem to require. Accordingly, we affirm the district court's dismissal of Decoster's constructive discharge claim on this additional basis.[2]

---

[2] Decoster's allegations that the hostile work environment and constructive discharge stemmed from race discrimination are also deficient. As the district court noted, Decoster's only allegation on this point is that Finkelstein did not speak to non-African American employees, including one Asian American colleague, "with the same disdain and contempt directed to her." *Decoster*, 2022 WL 3083343, at *5 (quotation marks omitted). This allegation is conclusory. Without more, this allegation cannot support a
(Continued)

13

C.

Finally, we address Decoster's challenge to the dismissal of her retaliation claim, beginning with the relevant background information. HHS argued in its motion to dismiss that this claim is moot because Decoster prevailed during the EEO proceeding and did "not contest the previous finding by the [NIH] on the merits of [the retaliation claim], with the exception of any damages sought in excess of those already awarded." Mot. to Dismiss (ECF No. 18-1) at 11.[3] In her response in opposition, Decoster conceded that the "NIH found in her favor on her retaliation claim in the administrative process," and argued that the district court should not dismiss the claim because although "[s]he d[id] not seek to appeal [NIH's administrative] finding," she sought to challenge "NIH's failure to award an appropriate amount of back pay and compensatory damages." Opposition to Mot. to Dismiss (ECF 19) at 6. She asked, "for a jury or the [district] [c]ourt, where appropriate, to determine the proper amount of damages given the finding of liability." *Id.* at 7.

In ruling on the 12(b)(6) motion, the district court noted that " 'Title VII does not authorize a federal-sector employee to bring a civil action alleging only that' the administrative agency's 'remedy was insufficient.' " *Decoster*, 2022 WL 3083343 at *6 (quoting *Laber v. Harvey*, 438 F.3d 404, 423 (4th Cir. 2006) (en banc)). Indeed, "to claim entitlement to a more favorable remedial award, the employee must place the employing

---

plausible claim for hostile work environment and constructive discharge based on race discrimination. *See Coleman v. Md. Ct. of App.*, 626 F.3d 187, 191 (4th Cir. 2010).

[3] Citations to the electronic case files (ECF) utilize the blue pagination found at the top of each page.

agency's discrimination at issue." *Laber*, 438 F.3d at 423. The district court recognized that "[alt]hough Decoster's brief posits that '[s]he does not seek to appeal [NIH's] finding,' only its remedy . . . her [c]omplaint does not rely on or adopt the NIH's administrative decision but instead solely states factual allegations in support of her retaliation claim." *Decoster*, 2022 WL 3083343 at *6. So the district court found no basis to dismiss her retaliation claim at that time "[b]ecause the [c]omplaint [did] not allege NIH's finding of retaliation or assert that it is binding on . . . [the] [c]ourt." *Id.* But given the arguments posited in her opposition to the motion to dismiss, the court sought clarification from Decoster:

> If Decoster acknowledges that the agency's determination on the issue of retaliation is now at issue in this case, she may proceed with her retaliation claim in order to seek a more favorable remedy but may not "require the district court to make a finding of liability" based on NIH's finding. If she chooses not to place NIH's finding on retaliation at issue, the Court will dismiss the retaliation claim.

*Id.* (citation omitted).

In the order granting in part the motion to dismiss, the court directed Decoster to "inform[] the Court whether she agree[d] to have the administrative agency's determination on retaliation placed at issue in th[e] litigation." J.A. 96. "If she d[id] not agree, [the retaliation claim] w[ould] be dismissed." *Id.* Decoster then filed her notice:

> Plaintiff . . . notifies the Court that she agrees with the Agency's administrative finding of retaliation but that she disagrees with the Agency's determination of damages pursuant to its finding of retaliation. In light of the Court's Order dismissing the remainder of Plaintiff's claims, Plaintiff requests and is entitled to a trial concerning damages.

J.A. 97.

15

Based on this response, the district court dismissed the retaliation claim and explained that "as stated in the Court's Memorandum Opinion, 'as a matter of law, Decoster's claim cannot proceed if she seeks to challenge only NIH's remedy' because " 'Title VII does not authorize a federal-sector employee to bring a civil action alleging only that' the administrative agency's 'remedy was insufficient.' " " *Decoster*, 2022 WL 4094569 at *1.

Decoster now argues that her retaliation claim should not have been dismissed because she indisputably stated a claim of retaliation in her complaint, rather than a request for a hearing on damages. We agree.

In order " '[t]o state a prima facie case of retaliation, a plaintiff must show that (1) the plaintiff engaged in a protected activity . . . ; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action.' " *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011) (quoting *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997), *abrogation on other grounds recognized by Gilliam v. South Carolina Dept. of Juvenile Justice*, 474 F.3d 134 (4th Cir. 2007)).

Decoster alleged that after her original one-year detail was approved, and after she complained to both Human Resources and Finkelstein about the hostile work environment, Finkelstein "told her that she could do a terminal detail," but "that the detail would not ensue unless Decoster dropped or dismissed her pending EEO complaint." J.A. 8 (emphasis removed). Decoster also alleged that her "supervisor and Human Resource officials were aware of her significant protected activity, namely formal and informal

16

complaints of discrimination and retaliation against her supervisor," J.A. 10, and that "[a]s a result of [Decoster's] protected activity, [HHS] engaged in conduct which would have dissuaded a reasonable person from complaining, to include a [LOE], [Decoster's] placement on an ODAP, and professional humiliation in front of [Decoster's] peers and colleagues." *Id.* at 10–11. These allegations, viewed at the 12(b)(6) stage, are sufficient to state a plausible retaliation claim.

The district court found that dismissal of Decoster's retaliation claim was not appropriate at the time of ruling on the 12(b)(6) motion because "her Complaint [did] not rely on or adopt the [Agency]'s administrative decision but instead solely state[d] factual allegations in support of her retaliation claim." *Decoster,* 2022 WL 3083343 at *6. Accordingly, the district court should have stopped its analysis there. We must remember the posture of the case as it was before the district court: a motion to dismiss under Rule 12(b)(6). To decide the viability of Decoster's retaliation claim, the district court should only have looked to the allegations within the four corners of Decoster's complaint. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("[W]hen a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint."). A review of Decoster's complaint shows no reliance on NIH's finding of liability or any assertion that is binding the court, nor is it only challenging NIH's remedy which would bar her claim under *Laber*.

Therefore, we hold that the district court erred by dismissing Decoster's retaliation claim. Decoster properly placed both the merits and remedy of her retaliation claim at

17

issue by filing her complaint containing allegations which sufficiently state a claim of retaliation under Title VII. The complaint itself made clear that Decoster intended to assert a retaliation claim de novo, rather than rely on the NIH's findings at the administrative level. As a result, we reverse and remand for further proceedings as to this claim.

## IV.

In sum, we affirm the district court's dismissal of Decoster's Title VII claims for hostile work environment and constructive discharge. But we reverse the dismissal of Decoster's retaliation claim and remand for further proceedings.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*